

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-1999

# USA v. Crandon

Precedential or Non-Precedential:

Docket 98-5161

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"USA v. Crandon" (1999). *1999 Decisions.* Paper 68.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/68

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 18, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5161

UNITED STATES OF AMERICA,

v.

RICHARD C. CRANDON,

      Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Criminal No. 97-cr-00482)
(District Judge: Honorable Harold A. Ackerman)

ARGUED OCTOBER 27, 1998

BEFORE: STAPLETON, LEWIS, and MAGILL,*
Circuit Judges.

(Filed March 18, 1999)

      DAVID E. SCHAFER (ARGUED)
      Office of Federal Public Defender
      22 South Clinton Avenue
      Station Plaza #4, 4th Floor
      Trenton, NJ 08609

      Attorney for Appellant

_____

* Honorable Frank J. Magill, Senior Circuit Judge for the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

GEORGE S. LEONE
GAIL H. NICHOLS (ARGUED)
Office of United States Attorney
970 Broad Street, Room 502
Newark, NJ 07102

Attorneys for Appellee

OPINION OF THE COURT

LEWIS, Circuit Judge.

Richard C. Crandon appeals his sentence following his guilty plea to one count of receiving child pornography. Crandon seeks to vacate his sentence on three grounds. He argues that the District Court erred when it: (1) ordered him to pay restitution for psychiatric medical expenses of his victim; (2) attached a special condition to his supervised release that limits his computer use; and (3) applied the cross-reference set forth in U.S.S.G. S 2G2.2(c)(1) when determining his base offense level under the Sentencing Guidelines. We will affirm the order of restitution and special condition of supervised release, but vacate and remand for reconsideration the application of the cross-reference.

I.

In early 1997, Crandon, then a 39-year-old New Jersey resident, met a 14-year-old girl from Minnesota on the Internet. After communicating through electronic mail for several months, Crandon traveled to Minnesota, in July 1997, where he met the girl and engaged in sexual relations with her. During this three-day visit, Crandon took approximately 48 photographs of the girl. Two of the photos were sexually explicit, including one depicting Crandon and the girl engaging in oral sex. After returning to New Jersey, Crandon mailed the undeveloped film to Seattle FilmWorks, a mail-order film processor located in Seattle, Washington, for developing. He later received the developed photos in New Jersey.

2

Following the July visit, Crandon and the girl spoke on the telephone regularly and discussed Crandon returning to Minnesota to bring her back to New Jersey with him. In August 1997, Crandon returned to Minnesota, picked up the girl and began to drive back to New Jersey. After traveling as far as Pennsylvania, Crandon and the girl learned that the police were searching for them. Crandon then placed the girl on a bus back to Minnesota. Upon his return to New Jersey, Crandon was arrested and the sexually explicit pictures from the July visit were seized.

Some three weeks later, the girl was admitted to a hospital psychiatric ward for suicidal ideation. She remained in the hospital for 50 days before being transferred to a long-term, in-patient psychiatric facility where she remained until the date of the sentencing. The hospital expenses incurred by the girl's mother totaled $57,050.96 (including medical and miscellaneous expenses). Prior to this incident, the girl had never sought or received mental health treatment.

Crandon pleaded guilty to one count of receiving child pornography in violation of 18 U.S.C. S 2252(a)(2). At sentencing, the District Court noted that section 2G2.2 of the Sentencing Guidelines provides a base offense level of 17 for a conviction of receiving child pornography. However, the District Court applied section 2G2.2's cross-reference, thereby invoking section 2G2.1, which raised the base offense level to 25.[1]

The District Court imposed a 78-month sentence and a three-year term of supervised release. The term of supervised release included a special condition directing that Crandon not "possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the United States Probation

_____

1. Section 2G2.1 of the Sentencing Guidelines applies to "Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production." U.S.S.G. S 2G2.1.

Office." The court also ordered Crandon to pay restitution in the amount of $57,050.96.

Crandon now appeals. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.

II.

We address first the claim that the sentencing court inappropriately imposed an order of restitution which covered the costs of the girl's 50-day hospitalization and related miscellaneous expenses. While we exercise plenary review over whether an award of restitution is permitted under law, we review specific awards of restitution for abuse of discretion. See United States v. Graham, 72 F.3d 352, 355 (3d Cir. 1996).

The mandatory restitution provision of the Protection of Children Against Sexual Exploitation Act requires awarding the full amount of the victim's losses suffered as a proximate result of the offense. See 18 U.S.C. S 2259(b)(3). Crandon argues that: (1) his conduct was not the proximate cause of the victim's losses; (2) even if it was, it was only part of the cause; therefore, the sentencing court should have ordered restitution for only a portion of the losses; and (3) his economic circumstances do not allow for payment now or in the foreseeable future; as such, only "nominal periodic payments" should have been ordered.

We disagree. Congress mandated broad restitution for a minor victim following an offender's conviction of federal child sexual exploitation and abuse offenses. The plain language of the statute clearly indicates that full restitution was warranted under these circumstances.

A. Proximate Cause

The District Court concluded by a preponderance of the evidence that Crandon's conduct was the proximate cause of the victim's losses. See Graham, 72 F.3d at 356 ("The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim."). In reaching its conclusion, the District Court relied upon the expert opinion of Jodi Pritchard, a

4

licensed social worker and treatment coordinator at the long-term psychiatric facility where the girl was treated. In a letter to the court, Ms. Pritchard stated that Crandon's contacts with the victim were "a significant contributing factor in [the girl's] worsening depression and suicide ideation." Supp. App. at 8. The government also presented a report of the psychiatrist who treated the girl and concluded that Crandon's conduct "exacerbated" her depression and led to her hospitalization. See Supp. App. at 16. This evidence was unrebutted.

Crandon challenges the court's consideration of Ms. Pritchard's opinion (though not the psychiatrist's opinion) on the ground that she is not a medical doctor. This type of challenge has been repeatedly rejected. See Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (permitting social worker to serve as expert witness regarding personal injury); Hammond v. International Harvester Co., 691 F.2d 646, 653 (3d Cir. 1982) ("[U]nder Rule 702, an individual need possess no special academic credentials to serve as an expert witness . . . . `[P]ractical experience as well as academic training and credentials may be the basis of qualification (as an expert witness).' " (citation omitted)); see also Fed. R. Evid. 702. We also note the facts that the victim had never been treated for a mental health problem before the incident, sought medical treatment and required hospitalization shortly after the incident, and had been placed in a long-term psychiatric treatment center. The District Court properly considered these factors in addition to the opinions of Ms. Pritchard and the psychiatrist.

Crandon also contends that his actions cannot be considered the proximate cause of the girl's losses because the government's mental health experts conceded that she may have suffered from pre-existing, untreated psychological problems prior to their relationship. Despite that reality, it was entirely reasonable for the District Court to conclude that the additional strain or trauma stemming from Crandon's actions was a substantial factor in causing the ultimate loss. We conclude that the District Court did not abuse its discretion in concluding that Crandon's

5

conduct was the proximate cause of the victim's hospitalization.[2]

B. Payment of Restitution

Crandon also argues that neither his current economic circumstances nor those in the foreseeable future allow for payment in full; therefore, the District Court should have imposed "nominal periodic payments." The District Court, however, was required to impose mandatory restitution. See 18 U.S.C. S 2259. The court was not permitted to consider Crandon's economic circumstances. See 18 U.S.C. S 2259(b)(4)(B) ("A court may not decline to issue an order under this section because of -- (i) the economic circumstances of the defendant."). After ordering full restitution, the court must set a payment schedule and may only order nominal periodic payments if the defendant proves indigency.[3] In this case, the court noted that Crandon "is a man with a college education with some master's points . . . [his] financial future is not bereft of hope." App. at 92. These findings, which are not disputed, suggest that Crandon's potential earning capacity precludes a determination of indigency. Accordingly, we do notfind the imposition of full restitution costs to be an abuse of discretion.

_____

2. Crandon also argues that he should only be required to pay restitution for "a percentage of the proximate cause." Appellant's Br. at 12. We note, however, that once proximate cause is established, the statute requires the court to order restitution for the "full amount of the victim's losses."
18 U.S.C. S 2259(b)(1). There is nothing in the statute that provides for a proportionality analysis.

3. The mandatory restitution provision specifies that enforcement of the order follow the guidelines set forth in section 3664. See 18 U.S.C. S 2259(b)(3). According to section 3664, after ordering full restitution, the court must set a payment schedule. See 18 U.S.C. S 3664(f)(2). In considering the manner and schedule of payment, the court is required to consider the defendant's financial resources, assets, projected income, and financial obligations. If the defendant's financial situation does "not allow the payment of any amount of a restitution order, and [does] not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments," then the court can order nominal periodic payments. 18 U.S.C.S 3664(f)(3)(B).

6

III.

We next address Crandon's challenge to the District Court's decision to limit his Internet access during his term of supervised release. We apply an abuse of discretion standard of review to the District Court's imposition of a special condition of supervised release. See United States v. Ritter, 118 F.3d 502, 504 (6th Cir. 1997); United States v. Schechter, 13 F.3d 1117, 1118 (7th Cir. 1994); United States v. Chinske, 978 F.2d 557, 559-60 (9th Cir. 1992).

As a part of Crandon's sentence, the District Court imposed the following condition of supervised release:

> The defendant shall not possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the U.S. Probation Office.

App. at 11. Crandon contends that the condition unnecessarily infringes upon his liberty interests and bears no logical relation to his offense.

A sentencing judge is given wide discretion in imposing supervised release. The validity of a condition of supervised release is governed by 18 U.S.C. S 3583. Pursuant to that statute, a District Court may order any appropriate condition to the extent it:

> (1) is reasonably related to certain factors, including (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) deterring further criminal conduct by the defendant, or (c) protecting the public from further criminal conduct by the defendant; [and]
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes of deterrence and protection of the public . . .

See 18 U.S.C. SS 3583(d), 3553(a).

We believe that the District Court's condition restricting Internet access is reasonably related to Crandon's criminal activities, to the goal of deterring him from engaging in further criminal conduct, and to protecting the public. In

this case, Crandon used the Internet as a means to develop an illegal sexual relationship with a young girl over a period of several months. Given these compelling circumstances, it seems clear that the condition of release limiting Crandon's Internet access is related to the dual aims of deterring him from recidivism and protecting the public.

Unquestionably, computer networks and the Internet will continue to become an omnipresent aspect of American life. As the U.S. Supreme Court observed in Reno v. Civil Liberties Union:

> The Internet is "a unique and wholly new medium of worldwide human communication." The Internet has experienced "extraordinary growth." The number of "host" computers -- those that store information and relay communications -- increased from about 300 in 1981 to approximately 9,400,000 by . . . 1996. Roughly 60% of these hosts are located in the United States. About 40 million people used the Internet [in 1996], a number that is expected to mushroom to 200 million by 1999.

117 S. Ct. 2329, 2334 (1997) (citations omitted).

Recognizing this, Crandon argues that as businesses continue to integrate computers and the Internet into the workplace, the special condition may hamper his employment opportunities upon release, as well as limit his freedoms of speech and association. However, in this case the restrictions on employment and First Amendment freedoms are permissible because the special condition is narrowly tailored and is directly related to deterring Crandon and protecting the public. See Ritter, 118 F.3d at 504 ("even though supervised release restrictions may affect constitutional rights such as First Amendment protections, most restrictions are valid if directly related to advancing the individual's rehabilitation and to protecting the public from recidivism."). In fact, several other courts of appeal have upheld conditions which implicate fundamental rights. See e.g., Ritter, 118 F.3d at 502 (defendant convicted of embezzling from employer was required to notify present and future employers of his past crimes); United States v. Schechter, 13 F.3d 1117 (7th Cir. 1994) (defendant, a

8

computer consultant who had admitted to stealing $95,000 from three employers was required as a condition of his supervised release, to notify all employers of his past crimes and current status on supervised release); United States v. Bortels, 962 F.2d 558 (6th Cir. 1992) (the defendant, as a condition of supervised release, was prohibited from associating with her fiancee because she had acted recklessly and endangered the community at large in a high-speed chase to protect her fiancee from arrest); United States v. Peete, 919 F.2d 1168 (6th Cir. 1990) (defendant, a city councilman, who had sought bribes in exchange for his vote, was prohibited as a probation condition from serving in or seeking elected public office).

We believe that the District Court carefully considered Crandon's prior conduct and the need to protect the public and did not abuse its broad discretion when it prohibited Crandon from accessing the Internet or other similar computer networks without prior approval from the U.S. Probation Office.

IV.

Finally, we turn to Crandon's argument regarding the sentencing court's application of the cross-reference in U.S.S.G. S 2G2.2, which increased the base offense level by eight points. Crandon argues that the District Court erred in assigning him a base offense level of 25 as outlined in section 2G2.1 pursuant to the cross-reference as outlined in section 2G2.2(c)(1). The standard of review of the District Court's interpretation and application of the Sentencing Guidelines is plenary. See United States v. Hallman, 23 F.3d 821, 823 (3d Cir. 1994).

It is undisputed that since Crandon pleaded guilty to violating 18 U.S.C. S 2252(a)(2), the Sentencing Guidelines direct that U.S.S.G. S 2G2.2 be applied.4 The issue before

_____

4. 18 U.S.C. S 2252(a)(2) provides that:

    (a) Any person who --

     (2) knowingly receives, or distributes, any visual depiction that
    has been mailed, or has been shipped or transported in interstate
or

us turns on whether or not the cross-reference contained in U.S.S.G. S 2G2.2(c) applies. The cross-reference states, in relevant part:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply S 2G2.1.

U.S.S.G. S 2G2.2(c)(1).

Crandon raises two objections, but we will focus on his argument that the court erred in refusing to consider his purpose or state of mind to determine whether the cross-reference is applicable.[5] At sentencing, the District Court stated that "the Sentencing Commission did not intend for the defendant's state of mind to be subject to interpretation when applying the cross-reference." App. at 55. Accordingly, the court refused to inquire into Crandon's purpose, motivation or intent.

The government argues that Crandon's intent is completely irrelevant to the application of the cross-reference. In fact, the government contends that the only relevant consideration should be Crandon's conduct: the fact that he "permitted" the girl to engage in sexually explicit activity and took pictures of that activity. Indeed, at oral argument, the government maintained that any person who takes such a picture a fortiori has the purpose of

_____

> foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if --
>
> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (B) such visual depiction is of such conduct . . . shall be punished as provided in subsection (b) of this section.

5. We reject Crandon's argument that the language of the cross-reference only pertains to crimes promulgated by "notice or advertisement." A plain reading of the cross-reference reveals that the phrase "by notice or advertisement" does not modify "permitting" or "causing."

10

producing a visual depiction of sexually explicit conduct, regardless of what the defendant may have to say about his or her state of mind. The government also acknowledged at oral argument that its view would give rise to a form of strict liability for the photographer, in terms of the application of S 2G2.2(c)(1), so long as the photograph depicts the proscribed sexually explicit conduct. We think the issue invites a bit more inquiry than the government's rigid position would allow.

We believe the District Court erred in determining that Crandon acted "for the purpose of producing a visual depiction of [sexually explicit] conduct" without permitting any actual examination or consideration of his purpose. U.S.S.G. S 2G2.2(c)(1) (emphasis added). It is simply not enough to say "the photo speaks for itself and for the defendant, and that is the end of the matter," as the government's position would dictate, when the statute makes specific reference to the defendant's purpose in taking the photograph. Recalling the presumption against strict liability in criminal law, see Morissette v. United States, 342 U.S. 246, 250-63 (1952), it is critically important to be certain that the defendant's purpose was, in fact, to create pornographic pictures. Crandon contends that his purpose in taking the pictures was the memorialization of his love for the girl, which had progressed to sexual intimacy, rather than the photographing of sexually explicit conduct. See Appellant's Br. at 25. Crandon thus posits a purpose arguably different from that proscribed by the statute. We think it at least deserves to be heard. Whether it is believed or not, or whether the distinction ultimately even makes any difference, is an entirely different matter. Though doubtful, it is conceivable that Crandon did have alternative, perhaps even multitudinous, purposes in taking the photographs. For instance, Crandon took approximately 48 pictures of the girl on his July visit. Two were sexual in nature, while the remaining photographs were not. Set in context, this fact could support his contention that his purpose in taking the photos was the memorialization of their time together or his love for her -- a purpose other than producing sexually explicit material. Our point is that some inquiry should have been made into Crandon's purpose, motivation or

11

intent so that the District Court could make an informed assessment as to the applicability of the cross-reference.

The government relies on United States v. Jones, 994 F.2d 456, 458 (8th Cir. 1993) and United States v. Harvey, 2 F.3d 1318, 1326 (3d Cir. 1993) to support its contention that intent or state of mind is irrelevant when applying section 2G2.2(c)(1). However, we do not read these cases to support a conclusion that conduct may supplant a consideration of purpose. In Jones, the Eighth Circuit affirmed an application of the cross-reference when Jones took photographs depicting a nine-year old girl lying on a bed with her genitals exposed. See Jones, 994 F.2d at 458. The Jones court wrote, "[defendant's] conduct in taking the photographs was done in preparation for his commission of the offense of conviction of receiving the photographs, and thus, was properly considered by the District Court in applying the cross-reference provision of Guidelines S 2G2.2." Id. at 459. In United States v. Harvey, we permitted the cross-reference to stand when the facts indicated that the pictures were part of a cataloged library of photographs documenting the defendant's extensive sexual contact with a variety of children.6 See Harvey, 2 F.3d at 1326. Harvey "took yearly trips to the Phillippines to solicit and engage minors in sexually explicit conduct . . ." Id. He recorded these activities on several hundred index cards, some of which indicated he had taken photographs of the children in the course of abusing them. Among the pictures he was convicted of possessing were the pictures he took of himself and the minors engaged in sexually explicit conduct. The Harvey court concluded that "Harvey caused or permitted a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" and applied the cross-reference. Id. However, there is no evidence that the courts in Jones or Harvey refused to or failed to consider the defendant's intent. Moreover, the facts of these cases clearly support a finding that the defendant caused the victim to engage in sexually explicit conduct for the purpose of photographing

_____

6. United States v. Harvey, 2 F.3d 1318 (3d Cir. 1993), involved an identical cross-reference in 2G2.4(c)(1) for possession of child pornography.

12

such conduct. Harvey's catalog system and extensive collection of child pornography demonstrate that his primary purpose was to create the photos; Crandon's purpose is not so clear.

To determine whether a cross-reference applies, the court must consider all relevant conduct. See U.S.S.G. S 1B1.3(a); see also United States v. Salemo, 61 F.3d 214, 220 (3d Cir. 1995). In determining whether to apply the cross-reference of S 2G2.2(c)(1), courts must consider the defendant's state of mind to ensure that the defendant acted "for the purpose of producing a visual depiction of [sexually explicit] conduct."

The cross-reference was inserted into the guideline to address "offenses more appropriately treated under section 2G2.1" which deals with the production of sexually exploitative material. See United States Sentencing Commission, 55 Fed. Reg. 19188, 19199 (1990). We think it may be possible for an individual to willfully take a sexually explicit photograph, but not for the purpose of producing sexually explicit material warranting a section 2G2.1 base level. Whether this is such a case is for the District Court to determine. In addressing this question, the court should consider Crandon's purpose or intent in taking the photographs before applying the cross-reference. Since the sentencing court made no such inquiry, we will vacate the District Court's application of the cross-reference and remand to the District Court for resentencing.

V.

To summarize, we will affirm Crandon's sentence with regard to the restitution and condition of supervised release. However, on the application of the cross-reference in U.S.S.G. S 2G2.2(c)(1), we will vacate the term of imprisonment and remand for resentencing consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13