UNITED STATES of America Plaintiff

v.

John H. ESTEP Defendant

No. CRIM.A. 04–14–DLB.

United States District Court,
E.D. Kentucky,
Ashland Division.

June 27, 2005.

Mark A. Wohlander, Assistant United States Attorney, Lexington, KY, for U.S.

Richard A. Hughes, Ashland, KY, for John Estep.

### ORDER

BUNNING, District Judge.

On May 2, 2005, the Court conducted a hearing to determine the proper amount of restitution owed to the victims of Defendant's criminal conduct. That hearing was conducted pursuant to 18 U.S.C. § 3664(d)(5). Defendant was present, with counsel, Richard Hughes, Esq. The United States was represented by Assistant U.S. Attorney Mark Wohlander. The proceedings were recorded by Official Court Reporter Amy J. Blosser.

During that hearing, the Court heard testimony from Betty Estep, Defendant's ex-wife and mother of one of the victims, and Dawn Hall, another mother of one of the victims. These two witnesses were the only witnesses who testified during the hearing. After listening to their testimony, the Court finds each witness was very credible. Subsequent to the hearing, the record was supplemented with the deposition of Dr. Sharon W. Cooper [1], who provided testimony regarding the problems the child victims were likely to encounter throughout their lives as a result of the sexual abuse and exploitation, as well as the anticipated costs of treatment necessary for the child victims. Upon consideration of the witnesses' collective testimony, the Court makes the following factual findings:

### I. *Findings of Fact*

#### *Betty Estep*

Betty Estep testified that as a result of Defendant's sexual abuse of her daughter (Victim No. 1), of which she became aware on December 28, 2003, she initiated divorce proceedings against Defendant. Betty Estep has incurred attorney fee costs relating to her divorce of $1,026.55. The divorce was uncontested.

At the time she became aware of the sexual abuse and exploitation of her daughter by Defendant, Ms. Estep and Defendant were in the process of purchasing the home in which they were residing.

---

1. Dr. Cooper's curriculum vitae was admitted during the hearing.

After the abuse and exploitation was revealed, Ms. Estep's neighbor purchased that same house and beginning in mid-April, 2004, Ms. Estep began renting the house from her neighbor. Ms. Estep lived in the house with her four children. The rent was $500 per month and lasted for approximately seven months. Although Ms. Estep owes her neighbor $3,500 in back rent, she is not out-of-pocket that amount.

### Dawn Hall

Dawn Hall is the mother of one of the victims (Victim No. 3) of Defendant's sexual abuse and exploitation. Once Mrs. Hall learned of Defendant's abuse of her daughter, her daughter confided in her that she was being ridiculed and harassed at school by two other girls in her class. Due to the harassment, Mrs. Hall's daughter would call her crying from school.

For her daughter's well being, and to stop the other two children from teasing her about what had occurred, Mrs. Hall removed her daughter out of Charles Russell Elementary School and enrolled her in Poage Elementary School. Although her daughter had been able to take the school bus to Charles Russell, and was able to ride a handicapped bus to Poage for the remainder of the 2004–2005 school year, she will not be able to do so for the 2005–2006 school year.[2] Because she will not be able to take the school bus to Poage Elementary, Mrs. Hall will have to drive her daughter to and from school each day for three years. Hall explained that the round trip distance is 9.6 miles. Based on 175 school days per year, at 1,680 miles per year, for 3 years, at a rate of $.0.405 per mile, which is the current government reimbursement rate for witness travel, her total expense is $2,041.20.

Mrs. Hall also explained that since the abuse and exploitation, her daughter's behavior has drastically changed and has difficulty sleeping. (Doc. # 31, Estep Presentence Report at ¶ 44). Mrs. Hall further explained that her daughter has told her that "when she grows up, she does not want to have any children because she is afraid she will 'do it' to them." (Id. at ¶ 46) Her daughter also has nightmares about Estep getting out of jail and kidnaping her. (Id.)

### Dr. Sharon Cooper

Dr. Sharon W. Cooper, a nationally recognized expert in the area of Forensic Pediatrics, testified via deposition in this case. Her deposition transcript is contained in the record at Docket Entry No. 38. Upon reviewing her curriculum vitae, counsel for the Defendant was satisfied that the Court would accept her as an expert. (Doc. # 38, Cooper Depo. at p. 3). Having reviewed her extensive background in developmental and forensic pediatrics, the Court finds Dr. Cooper to be very well credentialed and qualified to give expert opinions in this case regarding the need for past, present and future treatment for the three child victims.[3] The Court's *Daubert* finding is supported by not only her extensive knowledge and background in her area of expertise, but also the recent textbook Cooper has authored on child exploitation.

Dr. Cooper testified that based on her extensive experience in child development, there are four specific areas in a victim

---

2. This is due to the fact that the school system made an exception for Hall's daughter so she could ride with her handicapped son to Poage Elementary on the handicapped bus. Starting with the 2005–2006 school year, the brother will no longer attend Poage.

3. The third child victim is identified as Victim No. 2. The sexual abuse and exploitation of Victim No. 2 is detailed in ¶¶ 11–21 of Estep's presentence report.

child's development that may be impacted as a result of child sexual abuse and exploitation. These areas include: (1) behavioral problems which are often seen during childhood, adolescence and in adult years; (2) occupational impact particularly in the area of education for children and youths; (3) psychological diagnoses commonly seen as a result of abuse; and (4) medical complications throughout the course of the child victim's life which have been well documented in adults victimized by sexual exploitation during childhood. Dr. Cooper also testified about the need for and estimated costs of future treatment necessary for victims of child sexual abuse and exploitation.

Because of the vile, disgusting, and heinous conduct perpetrated on the three child victims in this case by Defendant, and the fact that this Order is of public record, the Court will not summarize the level of abuse and exploitation set forth in the presentence report, which has been filed under seal. Nor will the Court summarize the abuse and/or exploitation revealed by each child victim which was reviewed by and relied upon by Dr. Cooper in preparation for her testimony and opinions. Suffice is to say, each child victim suffered many heinous acts which will have a permanently effect on each of them as they become teenagers and adults. Additionally, each child victim was required by Defendant to play a sick and demented computer-type game whereby if they lost the game, they would be forced to do some sort of sexual act against their will for the Defendant. Moreover, they each were required to engage in coerced mutual sexual offending, whereby Defendant would force them to perform some sexual-type act with one another. While Victim No. 1 suffered the most lengthy period of abuse and exploitation, and the other two victims suffered approximately twenty such encounters with Defendant, each child victim is scarred for life. Cooper explained that the abuse and exploitation are life altering events for not only the victim but for her family as well.

Dr. Cooper explained that child sexual abuse and exploitation victims commonly suffer from a large number of behavioral problems. These problems include sexualized behaviors; elimination of appropriate boundaries; re-victimization and its associated risks; higher levels of shame, self blame, responsibility for the conduct; lower self-esteem; risk taking behaviors; sexual offending behaviors toward other children; self-injurious behaviors such as cutting and self-mutilation; distractability, as is seen in ADHD even if the victim had never suffered from ADHD prior to the abuse/exploitation; fearfulness; anger outbursts; withdrawn behaviors; somatic complaints; fearfulness of becoming an offender against children when they grow up; substance abuse; and being afraid to sleep alone. According to Dr. Cooper, many of these behavior characteristics have already manifested themselves in the three child victims in this case since December, 2003 when the abuse was revealed.

Dr. Cooper also testified that victims of child abuse and exploitation also suffer from widespread occupational problems. Among those are an inability to concentrate in school which in turn leads to poor performance which has a significant impact on the child's future employability. Although there is literature which points out that many child sexual abuse and exploitation victims are resilient and continue to make excel in school, Dr. Cooper indicated that there is significant research which reveals that child sexual abuse and exploitation victims have lower school achievement and greater cognitive impairments which are related in part to the child victim's distractability and their intrusive

thoughts which may occur during the school day. To the extent the children were also sexually exploited, as was the case with the three victims in this case, Dr. Cooper also indicated that a child victim's impairments are related to paranoia that other children know, or will know, what happened to them.

Dr. Cooper indicated that two of the most common Diagnostic Statistical Manual, Fourth Edition, Revised (DSM–IV Rev) diagnoses found with child sexual abuse and exploitation victims are post traumatic stress disorder (PTSD) and depression. However, Dr. Cooper emphasized that other diagnoses would include anxiety disorder, dissociation disorders, obsessive-compulsive disorder, addiction to drugs and alcohol, eating disorders, and sexual dysfunctions. As with the behavioral problems, the child victims in this case have already begun to experience some of these psychological problems as well.

Dr. Cooper also explained that the most significant psychological disorders which could occur are suicidal tendencies by the victim of child sexual abuse or child sexual exploitation. Dr. Cooper further explained that when a child victim is coerced into sexually offending against another same-sex child, as was the situation in this case, the literature reveals that it may lead to the victims being confused about their sexual preferences and/or gender identity as adults.

According to Dr. Cooper, the potential for developing any of the previously mentioned psychological disorders could occur immediately, or could be triggered by any number of events in the life of the three victims.

Dr. Cooper also explained that child sexual abuse and exploitation victims may be more likely to suffer other medical maladies as a result of their victimization. Her conclusions are based on recent research which revealed an increased incidence in chronic long term health problems in persons who have suffered adverse childhood experiences, which included child sexual abuse and neglect.

More specifically to the victims in this case. Dr. Cooper opined that the videotaping and/or photographing of the victims are a likely cause of paranoia, especially because a computer was used during the victimization of the three young girls. As her final area of concern, Dr. Cooper explained that when computers or the internet are used during child exploitation cases, the child victims may develop an aversion to computers which has a direct impact on educational achievement and employability later in life.

After reviewing the child victims' histories, counseling records, and offense conduct, Dr. Cooper explained that each of the three child victims has already exhibited some of the problems detailed herein as a result of the Defendant's criminal conduct. As a result, Dr. Cooper believes that restitution is necessary to ensure that the medical and/or psychological needs of the child victims and their families is available to treat their past, present, and future needs. More specifically, Cooper believes that a consistent mental health treatment regimen is necessary for each victim to ensure each is as stable and well-adjusted as possible considering the horrible experiences to which they have been exposed. This would include, but not be limited to, mental health services in certain times in their lives when aberrant behaviors are likely to occur, such as pre-teen years (which includes the treatments they are presently receiving), high school years, and during the early adult years.

Dr. Cooper also testified that if the three victims receive inadequate mental health services from now on, which the

Court construes as meaning the rest of their lives, they will be at risk for some of the long-term complications set forth herein. Dr. Cooper further explained that treatment regimen will be ongoing and it is her opinion that the services available within the private sector are far better suited towards the three victims herein because the private sector has fewer clientele and will be able to provide more comprehensive services to the children and their families.

Because one of the child victims has already gained a significant amount of weight and may go on to develop an eating disorder, another child who has already been decided by existing mental health services to have possible ADHD symptoms who may therefore develop academic problems, and another child who has completely denied any aspects of sexual exploitation which would place her in a very high risk for re-victimization, PTSD, and depression, there is a strong need for a continual and sustained course of treatment for all three child victims. Dr. Cooper also opines that future residential treatment and/or inpatient hospital care may be needed if the victims develop additional aberrant behaviors, many of which are distinct possibilities for each child victim. Dr. Cooper explained that nearly "85% of children will have long-term mental health or behavioral problems related to child sexual abuse" and that these children have a much better chance of having problems as not having problems. Dr. Cooper also believes that private inpatient and outpatient therapy is in the best interests of the child victims and their families.

With respect to the costs associated with treatment for any of the four specific areas in the victim child's development that may be impacted as a result of child sexual abuse or child sexual exploitation, Dr. Cooper testified that it is difficult to estimate exact costs. Because of the difficulty in predicting the various problems a child victim of child sexual abuse and/or exploitation may develop at some stage of the victim's life, Dr. Cooper was only able to provide estimates of costs based on current medical or psychological treatments available. For example, Dr. Cooper indicated that the average daily inpatient costs associated with psychiatric treatment would be in the range of $1,800 to $2,000 a day for an average treatment period of 30 days, totaling between $54,000 and $60,000 for that 30 day period. Inpatient treatment is oftentimes followed by residential treatment of between 30 to 90 days at an average cost of $4,000 to $5,000 a month. That residential treatment would likely be followed by maintenance therapy with an average cost of between $80 to $120 a session, and monthly medication averaging $40 to $50.

Dr. Cooper also discussed medical costs associated with eating disorders such as bulimia and anorexia. Inpatient treatment for these disorders averages 4 to 6 weeks at a cost of approximately $2,000 per day, totaling between $56,000 and $84,000. There are also costs associated with outpatient treatment which could average 12 weeks and include 3 to 4 hospital visits per week at a cost of $40 to $60 per visit. The visits would also include 1 to 2 therapy sessions per week at cost of $80 to $120 per session. For an average 12 week regimen, these costs would therefore vary between $2,400 and $5,760.

Each child victim has already received some outpatient counseling at Pathways, Inc. in Ashland, Kentucky. This counseling was described by Dr. Cooper as the "tip of the iceberg" which the child victims will need throughout their lives. More particularly, the treatment records reviewed by Dr. Cooper reveal that each child victim has received approximately 8

to 9 hours of treatment over the 15 month period from December, 2003 and March, 2005. According to the government, the current costs for those counseling sessions at Pathways, Inc. is $64.00 per hour, which will inevitably increase over time.

According to applicable Kentucky administrative regulations, 103 KAR 7:025, the current life expectancy for each child victim is approximately 75 years. Each child victim is now 9 years old, leaving a remaining life expectancy of 66 years. In its post-sentencing memoranda, the government asks for an amount of restitution for outpatient counseling of one hour per month for the rest of each of child victim's lives. Using that scenario, which is certainly realistic, the total amount would be $50,688 per child victim. Using the past 15 months as a guide, the amount would be reduced to $30,412.80 per child victim. Under either scenario, these amounts are conservative in that they do not factor in the expected costs increases for counseling sessions going forward.

### Other relevant facts

The mothers of each child victim in this case have retained Roger W. Hall to represent their children's interest and file a civil complaint pursuant to 18 U.S.C. § 2255. Plaintiffs in that civil action did not pay Hall a retainer and the costs were advanced by Hall. On March 23, 2005, a civil complaint was filed on behalf of the minor children pursuant to that statute. Subsection (a) of that statute does provide for the recovery of costs of the lawsuit, including a reasonable attorney's fee.

As of April 20, 2005, approximately $3,060 in attorney's fees have been incurred by attorney Hall on behalf of the minor victim children. Attorney Hall has also incurred the federal filing fee of $250 and long distance phone charges of $2.35. (Doc. # 36, Affidavit of Roger W. Hall).

## II. *Applicable Law*

### A. *Statutory Provisions*

Title 18, U.S.C. § 3663A(a)(1) provides in relevant part that ... "the defendant make restitution to the victim of the offense..." Section 3663A(b)(2) further provides as follows:

The order of restitution shall require that such defendant -

(2) in the case of an offense resulting in bodily injury to a victim -

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including non-medical care and treatment rendered in accordance with a method of healing recognized by law of the place of treatment;

\*      \*      \*      \*      \*      \*

(4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation and prosecution of the offense or attendance at proceeding related to the offense.

Because the offenses for which Defendant was convicted involved the sexual exploitation of children, 18 U.S.C. 2251 *et seq.* (Chapter 110 of Title 18), the mandatory restitution provisions set forth in 18 U.S.C. § 2259 are also applicable herein. Section 2259 provides, in relevant part:

(a) In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court *shall* order restitution for any offense under this chapter. (Emphasis added).

\*      \*      \*      \*      \*      \*

(b) Scope and nature of order.

(1) Directions. The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

\*    \*    \*    \*    \*    \*

(3) Definition.—For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for—

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorney's fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

(4) Order mandatory—(A) The issuance of a restitution order under this section is *mandatory*. (emphasis added)

### B. *Case Law Interpreting Governing Statutory Provisions*

Although the issue of mandatory restitution pursuant to 18 U.S.C. § 3663A has been addressed by the Sixth Circuit, the scope of mandatory restitution for minor victims of child abuse and exploitation pursuant to 18 U.S.C. § 2259 has not been addressed by the Sixth Circuit. In view of this void of controlling authority, the Court looks to other circuit courts of appeals for guidance.

In *United States v. Laney,* 189 F.3d 954, 966 (9th Cir.1999), the Ninth Circuit directly addressed the issue of restitution ordered for future, as well as past and present losses, pursuant to 18 U.S.C. § 2259 in child sexual exploitation cases. The Laney court held that the district

court may order restitution for future counseling costs of sexual abuse victims even though the costs of counseling have not yet been incurred. *Id.* at 966–67. More particularly, the district court in *Laney* ordered restitution in the amount of $60,000 to cover future psychological treatment and counseling for the child victim and her family. That amount was calculated by the child victim's psychiatrist based on a estimate that the counseling would last six years. Although the defendant objected to future costs, the Court concluded that "Congress intended to allow district courts to include future counseling costs in the amount of restitution under section 2259." Specifically, the Court held that "section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address long term affects of their abuse." *Id.* at 966.

Other circuit decisions have echoed these same sentiments and have upheld the mandatory nature of restitution pursuant to 18 U.S.C. § 2259. For example, in *United States v. Crandon,* 173 F.3d 122 (3rd Cir.1999), the Third Circuit upheld an order of restitution in the amount of $57,050.96, to cover the child victim's long term, in-patient hospitalization and related miscellaneous costs. Similarly, in *United States v. Julian,* 242 F.3d 1245, 1248 (10th Cir.2001), the Tenth Circuit held that restitution can be ordered to cover costs incurred up to sentencing, and future costs which might be incurred. The *Julian* court noted "...that a restitution order must be specific in a dollar amount that is supported by evidence in the record." In *United States v. Danser,* 270 F.3d 451 (7th Cir.2001), the Seventh Circuit upheld the district court's restitution order of $309,270, of which $304,200 was awarded to the child victim for her expected lifetime anticipated costs of future therapy. Al-

though the defendant argued victims of abuse should be required to petition courts to recover the costs of treatment as those costs are incurred, the court rejected the argument and held as follows:

> We do not believe that Congress sought to create such a cumbersome procedure for victims to receive restitution. In enacting section 2259, it is clear that Congress intended to provide victims of sexual abuse with expansive relief for "the *full* amount of ... [their] losses" suffered as a result of § 2259(b)(3)(B) (emphasis added). Congress chose un-ambiguously to use unqualified language in prescribing full restitution for victims. Indeed, in the legislative history of the contested statute, Congress cited the United States Supreme Court's land-mark decision in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113(1982). In that case, the Court dis-cussed, at great length, the devastating and long term effects that the sexual exploitation of children can have both upon the victims of that abuse and greater society. *Id.* In light of Con-gress's intent to make whole those vic-tims of sexual exploitation, we find that section 2259 allows for "restitutionary damages for the future costs of thera-py."

270 F.3d at 455.

### III. *Application of Law to Specific Items of Restitution Sought by the Government*

#### B. *Betty Estep*

Betty Estep seeks recovery of two spe-cific items as restitution from Defendant. First, she seeks her attorney's fees which stem from her divorce from Defendant after the child abuse and exploitation of Victim No. 1 was disclosed. Second, she seeks recovery of $3,500 in rent payments which were necessitated after she could no longer afford to purchase the home in which she and her four children had been living with Defendant.

As an initial matter, the fact that Betty Estep (or Dawn Hall) is not the direct victim of Defendant's sexual abuse and exploitation is of no consequence. Title 18, United States Code, Section 2259(c) in-cludes, within its definition of "victim", the legal guardian of the victim or other family member of the victim. Betty Estep and Dawn Hall certainly qualify as victims as the mothers of Victim No. 1 and Victim No. 3. Additionally, Congress has specifi-cally stated that all restitution amounts recoverable pursuant to 18 U.S.C. § 2259 are *mandatory*. *See* 18 U.S.C. § 2259(b)(4).

■ Betty Estep's request to recover attorney's fees in the amount of $1,026.55 is expressly permitted by 18 U.S.C. § 2259(b)(3)(E), which requires restitution for attorney's fees, as well as 18 U.S.C. § 2259(b)(3)(F), which requires restitution for any other losses suffered by the victim as a proximate result of the offense. Al-though Betty Estep's divorce was uncon-tested, and she had been separated from Defendant on one prior occasion for three days, the disclosure of Defendant's offense conduct involving her daughter clearly was the impetus behind the divorce filing. When the Court considers the vile and disgusting conduct Defendant forced Vic-tim No. 1 to perform upon him and with the other child victims, Betty Estep's deci-sion to divorce Defendant as a result of the offense conduct was certainly reasonable and understandable. Thus, Betty Estep's attorney's fees in the amount of $1,026.55 are proper restitution pursuant to 18 U.S.C. §§ 2259(b)(3)(E) & (F).

■ Betty Estep's request to recover her rent payments totaling $3,500 is also expressly permitted by statute, as the

Court finds it is a loss suffered by her as a proximate result of Defendant's offense conduct. But for Defendant's offense conduct, Betty Estep would have been able to continue to pursue the purchasing of the home and would not have been forced to pay seven months rent at $500 per month. Because Defendant ceased caring for Betty Estep and her children shortly after disclosure of the child abuse and exploitation, Defendant's actions proximately caused the change in housing circumstances. Those costs were therefore proximately caused by Defendant's offense conduct and are recoverable pursuant to 18 U.S.C. § 2259(b)(3)(F). The Court further finds the $3,500 in rent payments is recoverable as restitution pursuant to 18 U.S.C. § 2259(b)(3)(C) which mandates recovery of restitution for costs incurred for temporary housing.

## C. *Dawn Hall*

■ Dawn Hall seeks recovery of $2,041.20 in anticipated transportation expenses due to her having to drive her daughter to a new school. The Court finds that driving Child Victim No. 3 to Poage Elementary until she is old enough to attend the local middle school (and thereby use school bus service) is recoverable under both 18 U.S.C. § 2259(b)(3)(C), as a future cost to be incurred for necessary transportation, and 18 U.S.C. § 2259(b)(3)(F), as the driving of her to Poage Elementary for three years is a proximate result of the offense.

Using the undisputed figures of a 9.6 mile round trip to and from their home to Poage Elementary each school day for three years (9.6 miles X 175 school days X 3 years), at a the current government reimbursement rate of $.0.405 per mile, the restitution amount for these costs is $2,041.20.

## D. *Past, Present, and Future Treatment Costs for Child Victims No. 1, No. 2, and No. 3*

Based on the plain reading of the applicable statutes, to wit, 18 U.S.C. §§ 3663A(b)(2)(A) and 2259(b)(3)(A), and circuit court decisions in *Laney, Crandon, Julian,* and *Danser* cited herein at pp. 13–14, a restitution award of past counseling costs and anticipated future therapy and counseling costs for each of the three child victims is warranted and is specifically mandated by statute. The question for the Court is what amount is supported by the record and the testimony of Dr. Cooper.

### (A) *Past Treatment and Counseling Costs*

■ With respect to the counseling costs which have been incurred up to and including March, 2005, the Court concludes that the Pathways, Inc. counseling sessions were necessary to treat each of the child victims in this case. As stated by Dr., Cooper, the treatment already rendered is just the "tip of the iceberg" of the treatment which will be required for each child victim. Based on the record before the Court, each child victim has received 8 to 9 hours of counseling and therapy at Pathways, Inc. At a cost of $64 per hour, and using the more conservative 8 hours rather than 9 hours, the total cost for the past treatment is $512.00 per child victim. This amount is properly recovered as restitution pursuant to 18 U.S.C. §§ 3663A(b)(2)(A) and 2259(b)(3)(A) and the case law cited herein. The fact that the victim or the victim's family has or may be entitled to receive compensation for the same injuries from the proceeds or insurance or other sources is of no consequence in ordering restitution pursuant to 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(b)(4)(B)(ii).

## (B) *Future Past Treatment Costs*

According to Dr. Cooper, 85% of children who have suffered sexual abuse and exploitation will have long-term mental health or behavioral problems related to child sexual abuse. Thus, it is clear that a long term treatment and counseling regimen is going to be required to ensure that each child victim receives the care she needs to avoid the devastating and long term effects of the abuse and exploitation.

In this case, it is undisputed that one of the child victims has already gained a significant amount of weight and may very well develop an eating disorder, another child victim has already been diagnosed with possible ADHD symptoms, and another child victim has completely denied any aspects of sexual exploitation. According to Dr. Cooper, this places the latter child victim in a very high risk for re-victimization, PTSD, and depression. Based on her review of the record herein and vast experience in child abuse and exploitation treatment, Dr. Cooper has also opined that there is a strong need for a continual and sustained course of treatment for all three child victims. Dr. Cooper has further opined that future residential treatment and/or inpatient hospital care may very well be needed if the victims develop additional aberrant behaviors, many of which are distinct possibilities for each child victim.

■ Based on the past history of the child victims' Pathways, Inc. counseling and treatment, and in consideration of Dr. Cooper's characterization that the past treatment is merely the "tip of the iceberg" of the necessary treatment and counseling each victim will need, the Court believes that government's request of an amount restitution equal to outpatient treatment of one hour per month for the rest of their lives is reasonable and warranted. Although the actual treatment for the first 15 months following disclosure of the abuse was slightly less frequent than requested by the government, Dr. Cooper's characterization convinces the Court that one monthly session is the minimum necessary to adequately treat each child victim. Using a remaining life expectancy of 66 years, the amount of restitution for future monthly treatment and counseling is $50,688 per child victim. In imposing restitution for the lifelong costs of treatment and counseling, the Court specifically relies upon the Seventh Circuit's decision in *United States v. Danser,* 270 F.3d 451, 455–56 (2001).

■ Additionally, because Victim No. 1 suffered abuse and exploitation since age 5, she is at a very high risk for re-victimization, Post Traumatic Stress Disorder, and depression. For those reasons, and in consideration of the degrading and disgusting acts of sexual abuse and exploitation committed by Defendant upon Victim No. 1 (*see* Cooper depo. at pp. 8–9), the Court orders that Defendant pay restitution to Victim No. 1 for the anticipated costs of one private, 30 day inpatient psychiatric treatment program, totaling $54,000, followed by a by a residential treatment regimen of 30 days, totaling $4,000.

Although the other two child victims may also be in need of additional future treatment, because their exposure to the abuse and/or exploitation was less than Victim No. 1, the Court concludes that additional restitution beyond what has already been ordered for Victims No. 2 and No. 3 is not warranted.[4]

---

4. The restitution ordered herein for past and future treatment and counseling costs for the three minor victims is consistent with Congress' presumption that the minimum amount of damages a child is presumed to have suffered is $50,000. *See* 18 U.S.C. § 2255(a)

### E. *Attorney's Fees of Roger W. Hall*

 Although Attorney Hall's fees and costs have been expended representing the mothers of the three minor child victims in this case in a separate civil case (Ashland Civil No. 05–55–DLB), his representation was certainly on behalf of the victims in this criminal case. "Victims" includes the abused and exploited children and their mothers. *See* 18 U.S.C. 2259(c). His reasonable attorney's fee of $3,060 and costs of $252.35 are therefore recoverable in this criminal matter as mandatory restitution pursuant to 18 U.S.C. § 2259(b)(3)(E). An award of fees and costs to the minor victims' mothers is also consistent with the language of 18 U.S.C. § 2255(a) which permits the recovery of costs and a reasonable attorney's fee. Although incurred in the civil case, Attorney Hall's representation, fees, and associated costs clearly were on behalf of the victims in this case. Therefore, restitution for those amounts is warranted herein.

### IV. *Conclusion*

Based upon the facts set forth herein, and in consideration of the facts set forth in Defendant's PSR, and after reviewing the governing statutory restitution provisions contained in 18 U.S.C. §§ 2259 and 3663A, and the case law interpreting those statutes, and the Court being otherwise sufficiently advised;

**IT IS ORDERED as follows:**

(1) Defendant shall pay restitution totaling $221,480.10, to the following victims in the following amounts:

| | |
|---|---|
| (A) Betty Estep | $1,026.55 (attorney fees in divorce proceeding); $3,500.00 (rent payments) |
| (B) Dawn Hall | $2,041.20 (transportation expenses) |
| (C) Victim No. 1 | $512.00 (past treatment and counseling costs); $50,688.00 (lifelong monthly outpatient treatment and counseling costs); $58,000.00 (inpatient treatment and residential follow-up treatment) |
| (D) Victim No. 2 | $512.00 (past treatment and counseling costs); $50,688.00 (lifelong monthly outpatient treatment and counseling costs) |
| (E) Victim No. 3 | $512.00 (past treatment and counseling costs); $50,688.00 (lifelong monthly outpatient treatment and counseling costs); |
| (F) Betty Estep Dawn Hall Erica Clark | $3,312.35 (attorney's fees and costs incurred by Attorney Roger Hall on their and the minor victims' behalf) |

(2) The restitution ordered herein shall be paid from Defendant's monthly retirement benefits and shall be paid monthly to the victims and divided evenly between each of the victims until such time as the restitution is paid in full.