**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1198
_____

UNITED STATES OF AMERICA

v.

LEONARD HERRINGTON,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-14-cr-00315-005)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2017
_____

Before: VANASKIE, RENDELL and FISHER, *Circuit Judges*

(Filed: December 22, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellant-Defendant Leonard Herrington appeals from the order of the District Court denying his motion for a judgment of acquittal based on insufficient evidence and from the judgment of sentence imposing restitution despite an untimely request by the Government. Upon review, we will affirm both orders for the reasons that follow.

**I.**

Leonard Herrington was a member of a criminal group that defrauded banks by cashing counterfeit checks and obtaining loans through fraudulent applications. The group was led by Herrington's cousin, Adolphus William Cato. According to the testimony of Sean Finn, another member of the group, Cato would apply for bank loans online using "somebody's Social Security number, somebody's name, birthdate and all that"—information which Cato received from his wife. (App. 114.) Eventually, Cato would follow up with the bank by phone to check on the status of the loan. When the loan was approved, Cato would send a "runner" to the bank to sign the forms and collect the money. These runners were provided with fake identification—produced by Cato— matching the identity under which the loan application had been filed, and Cato would instruct the runners on how to answer questions posed by bank officials.

Herrington's role in the organization was to, among other things, recruit runners to carry out Cato's loan scam. Specific to the charges in this case, Herrington recruited his friend Michael Jaje into the scheme. Herrington offered Jaje a chance to "make some quick easy money." (App. 140.) After Jaje expressed interest, Herrington met Jaje at a CVS so that Jaje could obtain a passport photo that Cato would turn into a driver's

2

license.  Herrington paid for the photo, and Herrington and his girlfriend, Zabrina, drove Jaje to meet with Cato.  Herrington explained to Jaje that Cato would make a fake driver's license with Jaje's photo.  Later that evening, Herrington sent Jaje a text message explaining how to dress for his encounter at the bank.  When Jaje expressed concern about being caught, Herrington told him, "It's cool.  Don't worry about it.  Me and my girl did it before."  (App. 143.)

Herrington and Zabrina picked Jaje up the next day, and together they drove to a Wawa market where they met Cato.  Herrington and Cato went into the Wawa and were having a conversation when they emerged a short time later.  Herrington eventually told Jaje to join them.  Cato gave Jaje a fake Pennsylvania driver's license in the name of Matthew Baker—a real person—but with Jaje's photo.  The license was wrapped in a piece of paper with Matthew Baker's name and social security number, the identity under which the loan application had been filed.  Cato reassured Jaje that that the scheme would be "real easy," and he would only have to sign the bank documents. (App. 146–47.)

Herrington and Zabrina then drove Jaje to the bank, where they again met with Cato.  Cato handed Jaje a cell phone and said, "Here, take this in case you need to call somebody."  (App. 149.)  Cato instructed Jaje to enter the bank and ask for Sonia, who would then call Jaje into her office to sign for the loan.  Jaje entered the bank and followed Cato's instructions.  Jaje pretended to be Matthew Baker, and provided information consistent with the identification and details Cato had given him.  When Jaje finished signing the paperwork, the police were waiting to arrest him.

Herrington was indicted by a grand jury in the Eastern District of Pennsylvania charging: (i) conspiracy to commit bank fraud and the use of unauthorized access devices; (ii) bank fraud and aiding and abetting; and (iii) aggravated identity theft and aiding and abetting. He was convicted of all three charges after a jury trial. Herrington filed a post-trial motion for a judgment of acquittal directed against his aggravated identity theft conviction, but the motion was denied by the District Court.

Herrington's presentence report ("PSR") was prepared on or about October 21, 2015. No restitution was assessed because Herrington's conviction was limited to a single attempted offense, and the Government filed no timely objection. On January 5, 2016, the day of Herrington's sentencing, the Government sent a letter to the District Court requesting restitution in the amount of $24,921.62. The Government's position was that, because Herrington had been convicted of conspiracy to commit bank fraud between October 2013 and May 2014, and because another bank fraud committed by Cato's organization had occurred on March 11, 2014 and had yielded a loss of $24,921.62, Herrington was eligible for consideration for joint and several restitution regarding the March 11th fraud.

A separate hearing was scheduled for January 20, 2016, to address the availability of restitution in light of Herrington's claim that the Government had waived mandatory restitution by failing to object to the PSR within the time required by Federal Rule of Criminal Procedure 32(f)(1) and Eastern District of Pennsylvania Local Rule 32.3(4). After argument, the District Court determined that the mandatory nature of restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, overrides

4

the federal and local rules. The District Court then ordered restitution in the amount requested by the Government.

Herrington appeals the District Court's denial of his post-trial motion for a judgment of acquittal challenging the sufficiency of the evidence presented at trial with regard to the aggravated identity theft conviction. He also appeals the District Court's imposition of restitution.

## II.[1]

Herrington first challenges the District Court's ruling on his post-trial motion for a judgment of acquittal. Aggravated identity theft under 18 U.S.C. § 1028A(a)(1) "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). In other words, a defendant must know that he is using an identity belonging to a real person rather than a fictitious person. Despite the jury verdict, Herrington asserts that the evidence presented at trial was insufficient to prove that he knew the identity of a real person was being used in obtaining the fraudulent bank loan.

A district court ruling on a motion for judgment of acquittal based on insufficiency of the evidence must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

---

[1] The District Court had jurisdiction over this matter under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

5

To avoid "usurp[ing] the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury," *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal citations omitted), insufficiency should be found only "where the prosecution's failure is clear." *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "The jury's verdict will be overturned 'only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010) (quoting *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008)). We exercise plenary review over such appeals and independently apply the same standard as the district court. *Brodie*, 403 F.3d at 133.

Herrington asserts that the Government never proved that he was aware that M.B. or Matthew Baker, the victim whose identity was used in the loan scam, was a real person. In Herrington's view, the Government was only able to show that he was involved in recruiting Jaje as the runner—a role that did not necessarily require knowledge of the victim's identity. Cato, on the other hand, had applied for the loan in Baker's name, called the bank to check on the status of the application, created the fake documents from Baker's identity, and instructed Jaje on how to proceed.

The Government's theory rests largely on circumstantial evidence and inferences. First, the Government argues that Herrington, through experience and common sense, would have realized that a sophisticated financial institution like a bank would perform even a minimal level of due diligence on a loan application for a significant sum of money. This diligence would include checking whether the loan application is associated

6

with a real person. Thus, the Government asserts that the jury could have concluded that anyone would know that a bank loan would only be granted to a real person with a real social security number.

Second, the Government highlights the testimony of Sean Finn, a former associate of Cato's who appears to have played roughly the same "recruiter" role as Herrington in the loan scam operation. Finn testified that, through his role, he was aware that real identities were used in the loan scam. Finn also explained that he knew the scam would not work unless the victims were real. The Government argues that the jury could have concluded that Herrington had the same knowledge of the operation as Finn given their similar roles. The Government also emphasizes that the amount and quality of contacts between Herrington and Cato bolsters such an inference.

Finally, the Government argues that the jury could have concluded from Herrington's reassurance to Jaje—*i.e.*, his indication that "me and my girl did it before"—that Herrington had acted as a runner in the past and therefore would understand that a real identity was required to complete the scam. (App. 143.)

Because we are reviewing a jury verdict, we view the evidence in the light most favorable to the prosecution. Through this lens, we conclude that the aforementioned pieces of evidence could lead a rational trier of fact to find proof beyond a reasonable doubt that Herrington knew that M.B. or Matthew Baker was a real person.[2] Thus, we

---

[2] Even if the evidence had been insufficient to allow a reasonable juror to conclude that Herrington knew that Matthew Baker was a real person, his challenge would still fail under the *Pinkerton* theory pursued by the Government. The Government had alleged that Herrington was a conspirator and thus responsible for any reasonably foreseeable

7

find no error in the District Court's denial of Herrington's motion for judgment of acquittal.

## III.

Herrington additionally challenges the District Court's decision to impose restitution at sentencing despite the Government's failure to file a timely objection to the PSR, which recommended no restitution. As explained above, the Government waited until the day of Herrington's sentencing to request restitution. Herrington argues that the Government's request for restitution was untimely under Federal Rule of Criminal Procedure 32(f)(1) and Eastern District of Pennsylvania Local Rule 32.3(4), which require that objections to the PSR be made within 14 days of the PSR's receipt. The District Court decided that it was bound to impose restitution due to the "mandatory nature" of the MVRA. Appellant's Br. at 4.

"We review a restitution order 'under a bifurcated standard: plenary review as to whether restitution is permitted by law, and abuse of discretion as to the appropriateness of the particular award.'" *United States v. Simmonds*, 235 F.3d 826, 829 (3d Cir. 2000) (quoting *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999)). Because Herrington's only challenge is to the legality, rather than the amount, of the restitution, our review is plenary. *United States v. Quillen*, 335 F.3d 219, 221-22 (3d Cir. 2003).

---

crimes committed by his co-conspirators as long as they were committed during and in furtherance of the conspiracy. *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998). At a minimum, the evidence clearly shows that Cato was aware that Matthew Baker was a real person and that the use of a real identity was reasonably foreseeable. Thus, Herrington bears responsibility as a co-conspirator.

The purpose of the MVRA is, "to the extent possible, to make victims whole, to fully compensate victims for their losses, and to restore victims to their original state of well-being." *Id.* at 222 (quoting *Simmonds*, 235 F.3d at 831). To aid in effectuating this purpose, the MVRA states:"Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim . . . ." 18 U.S.C. § 3663A(a)(1). Our sister circuits have held that the "notwithstanding" language in § 3663A(a)(1) should be read as "Congress's indication that the statute containing that language is intended to take precedence over any preexisting or subsequently-enacted legislation on the same subject." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015) (quoting *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006)). In *United States v. Puentes*, the Eleventh Circuit held that a district court acted beyond its authority when it reduced a defendant's mandatory restitution obligation under Federal Rule of Criminal Procedure 35(b) because allowing such a reduction under Rule 35(b) would "conflict with the scheme enacted by Congress in the MVRA." *Id.* at 606–07; *see also United States v. Williams*, 612 F.3d 500, 513 (6th Cir. 2010) (concluding that "the mandatory language of the MVRA trumps the equitable policies underlying the discretionary doctrines of collateral estoppel and judicial estoppel"). In much the same way, a finding that restitution was foreclosed by an untimely request under Federal Rule of Criminal Procedure 32(f)(1) or Eastern District of Pennsylvania Local Rule 32.3(4) would plainly conflict with the mandatory nature of restitution under the MVRA. The

9

District Court did not err in adhering to the MVRA by imposing restitution upon Herrington.

## IV.

For the foregoing reasons, we will affirm the District Court's October 15, 2015, order denying Herrington's motion for a judgment of acquittal and the District Court's judgment of sentence entered January 21, 2016.