**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOHN DOE,
          *Defendant-Appellant.*

No. 05-50474

D.C. No.
CR-04-01599-RGK

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOHN DOE,
          *Defendant-Appellant.*

No. 05-50781

D.C. No.
CR-04-01599-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
February 5, 2007—Pasadena, California

Filed May 29, 2007

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge O'Scannlain

6331

**COUNSEL**

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, argued the cause and filed a brief for the

defendant-appellant. Sean K. Kennedy, Acting Federal Public Defender, Los Angeles, California, was also on the brief.

Rupa S. Goswami, Assistant United States Attorney, Los Angeles, California, argued the cause and filed a brief for the plaintiff-appellee. Debra Wong Yang, United States Attorney, Thomas P. O'Brien, Assistant United States Attorney, and Andrea L. Russi, Assistant United States Attorney, all of Los Angeles, California, were also on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether restitution can be awarded to the overseas child victims of sexual exploitation crimes committed by an American citizen while he was traveling outside the United States.

I

A

Between July 2003 and November 2004, John Doe, a citizen of the United States, traveled to his native country three times.[1] On November 4, 2004, Doe was returning through Los

---

[1] The defendant-appellant has moved to have this disposition filed using a pseudonym. We are cognizant "that the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981). Nonetheless, in exceptional cases where necessary to protect a person from injury or harassment, we have allowed the use of pseudonyms. *Id.*; *see also United States v. Doe*, 239 F.3d 473 (2d Cir. 2001). Because the pleadings by the government were filed under seal in the district court, and because the briefs and records have remained sealed on appeal, *see* Circuit Advisory Committee Note to 9th Cir. R. 27-13, we grant the motion to file a pseudonymous disposition and refer to the defendant herein as "John Doe."

Angeles International Airport with his mother when inspectors discovered digital child pornography images stored on a memory stick taped to the inside of a "fifth pocket" on a pair of jeans. The roughly 500 pictures displayed images of naked boys who appeared to be between 12 and 14 years old. One series of pictures portrayed Doe performing sex acts upon a minor child. Doe confessed that he had taken the pictures of the naked children and explained that they were part of a dance group of which he was a sponsor.[2]

On the night that Doe was arrested, he called his brother and instructed him to destroy evidence at defendant's home. The brother removed a laptop computer along with 56 CDs and a brown envelope containing child pornography from his brother's house. The CDs contained over 1,000 images of child pornography. These items were eventually turned over to the authorities by Doe's brother after he was served with a subpoena.

## B

On November 5, 2004, a criminal complaint was filed against Doe for the possession and transportation of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(1). A federal grand jury returned a four-count indictment on November 19, 2004. On March 1, 2005, pursu-

---

[2]This was not the defendant's first involvement with child pornography. In 1997, a parcel mailed to Doe from Germany was intercepted at John F. Kennedy Airport in New York City; the parcel contained a book of child pornography. In 2002, while Doe was working as an auditor for the California Department of Real Estate, a computer systems analyst who was performing maintenance on Doe's computer discovered child pornography stored on the laptop. A subsequent investigation revealed that defendant also was in possession of a compact disc ("CD") in the laptop's CD-drive containing over 800 images of child pornography. Doe was allowed to resign in July 2003. Finally, in August 2003, Immigration and Customs Enforcement Agents identified Doe as an individual who had purchased memberships to international child pornography web-sites.

ant to a plea agreement with the government, Doe plead guilty to counts one and two of the indictment: (1) the production of child pornography outside the United States, in violation of 18 U.S.C. § 2251(c)(1); and (2) engaging in illicit sexual conduct with minor persons in foreign places, in violation of 18 U.S.C. § 2423(c).

As part of the defendant's written plea agreement, he stipulated to the following facts:

> On or about September 23, 2004 until on or about November 4, 2004, defendant, a citizen of the United States, traveled in foreign commerce, that is, from Los Angeles, California to [his native country] and engaged in illicit sexual conduct with minor persons who were under the age of sixteen. Defendant, among other things, masturbated and intentionally touched the unclothed genitalia of at least four minor boys with the intent to arouse the sexual desires of himself, the minors, or other persons. Moreover, defendant employed, used, coerced, or persuaded eight boys between the ages of 14 and 15-years old to engage in masturbation of at least two minor boys and the lascivious exhibition of the genitals and anal areas of eight minor boys, for the purpose of producing visual depictions of such conduct. Defendant then photographed the boys while engaged in such conduct using a digital camera, produced at least 146 depictions of the boys' sexually explicit conduct, and then stored those visual depictions on digital camera memory sticks. On November 4, 2004, defendant intended to transport and did transport his digital camera and the digital camera memory sticks containing the aforementioned visual depictions in foreign commerce by physically transporting them from [abroad] to Los Angeles, California.

In addition to agreeing to a sentencing recommendation of 204 months imprisonment, Doe agreed to make full restitution

for the losses caused by his actions, and also agreed that the amount of loss was not restricted to the loss arising out of the charges to which he pled guilty.

C

The probation officer's pre-sentence report ("PSR") calculated an adjusted offense level of 36 for both counts of conviction. The recommended Guidelines' range was therefore 188 to 235 months. In addition, the PSR contained statements from the victims about the crime and about the impact that Doe's actions had on their lives. Before Doe's first sentencing hearing, he filed objections to these portions of the PSR, claiming that the statements of the victims had been exaggerated and were not credible. He also objected that the victims were not fully identified. The government filed its response, concurring in the factual findings of the PSR and in its sentencing calculations. In accordance with the plea agreement, the government requested a 204-month sentence.

The district court held the first sentencing hearing on June 16, 2005. There, the district court considered objections made by Doe to the PSR. One particular objection made by Doe was to the victim impact statements contained in paragraphs 45-53 of the PSR. Doe argued that because the statements were so similar and because the victims were not identified, he was unable to determine whether the statements were true. The district court responded that it was going to "overrule the request [to strike] for this without prejudice to bring it up at the time of the restitution hearing as to whether or not proper discovery has been made so they can argue at the restitution hearing which is in August."

At the end of the first sentencing hearing, counsel for Doe requested the opportunity "to look at the conditions" of supervised release that the court was considering imposing. The court denied the request, stating that "[i]f you object to it [the recommended conditions], post sentence you can do that."

The district court then sentenced Doe to 204-months imprisonment to be followed by a lifetime of supervised release and also read into the record the conditions of release. Doe specifically objected at that time to conditions 11 (that he be required to take any prescribed psychiatric medication) and 21 (that the Probation Office could provide the PSR to Doe's treatment provider). The district court overruled both objections. The court deferred ruling on restitution pending a separate hearing.

D

At the restitution hearing, Doe again objected to the victim impact statements contained in the PSR. The government, relying upon the factual statements contained in the PSR, sought total restitution in the amount of $18,265 for eight of the defendant's eighteen victims. The specific restitution sought by the government included:

- Psychological and medical treatment in the amount of $1,426 per child (24 sessions of trauma counseling and psychological care, case review by a social worker employed by the World Vision Foundation and quarterly medical check-ups);

- Vocational training, a Catch-Up program for a GED-type degree, and formal schooling, in the amount of $208 per child;

- A management fee of $2,383 payable to the World Vision Foundation to coordinate services for the child victims.

- $338 per child in initial start-up capital to aid in opening a cellular telephone repair shop

The district court denied the request for $338 in start-up capital, but agreed with the government that the other costs were

reasonable and proximately caused by defendant's conduct. The district court therefore ordered defendant to pay total restitution in the amount of $16,475.

Doe filed a timely notice of appeal.

II

A

Doe's first argument on appeal is that the district court violated Fed. R. Crim P. 32 by failing to resolve a dispute over the credibility of the allegations made by defendant's child victims in paragraphs 45 to 53 of the PSR. In response, the government contends that the district court did not violate Rule 32 because it specifically resolved the credibility disputes in favor of the victims when it "overruled" defendant's objections and when it relied upon these disputed paragraphs as the basis for its restitution award.

**[1]** Rule 32(c)(1) requires that "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary." We have mandated "strict compliance" with this rule. *United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir. 2006) (citing *United States v. Garfield*, 987 F.2d 1424, 1428 (9th Cir. 1993) and *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1516 (9th Cir. 1990) (en banc)). We have recognized, however, that the rule is complied with where the district court expressly adopts the position of either party to the dispute. *See United States v. Karterman*, 60 F.3d 576, 583 (9th Cir. 1995) (finding Rule 32 satisfied where district court stated that he was persuaded that the correct amount of loss was that argued by the government).

**[2]** At the first sentencing hearing, Doe objected to paragraphs 45-53 on the ground that the victims were not identified. The court explicitly resolved this dispute when it

overruled Doe's objections. At the second sentencing hearing, Doe again objected to paragraphs 45-53, though the record reflects that this time, the objection was over the credibility of the witnesses' statements. The district court did not violate Rule 32 because it resolved the objection by expressly adopting the statements of the child victims. The district court stated: "We have statements of these victims such as Victim 1, dropped out of school and is under constant supervision of his grandparents since the abuse occurred. Obviously the whole person was affected, not just medical, psychological." After reciting another victim's story, the district court stated, "[i]t goes on and on with all these. Their entire life has been changed because of the actions of the defendant."

**[3]** The district court's adoption of these statements reflects its resolution of the credibility dispute. Although no specific factual finding was made, it is clear that the district court adopted the statements in the PSR as credible and therefore sided with the government. Such a resolution is sufficient under this circuit's law. *See United States v. Rigby*, 896 F.2d 392, 394 (9th Cir. 1990) ("[T]he district court clearly stated that it found the position as stated in the Probation Officer's addendum to be the correct one. There was no inadequacy of findings. The record at the sentencing hearing reflects no confusion on anyone's part as to what the district court decided.").

B

Doe also challenges the amount of the restitution order imposed by the district court. He contends that the government failed to meet its burden of demonstrating that the restitution costs it sought to recover were the proximate result of his criminal actions. Specifically, he argues that many of the expenses were for activities that the victims had been engaged in prior to being the victims of his sexual abuse, such as schooling and vocational training; according to Doe, restitution is therefore being used "to advance them [the victims]

beyond their prior station in life." Doe also objects to: (1) costs related to schooling (school supplies, travel allowances, uniforms, the costs of food and snacks); and (2) the costs of case review and processing. In response, the government argues that the award of restitution costs by the district court was not an abuse of discretion. It argues that the defendant's sexual abuse of the children was the proximate cause of their psychological, physical and social trauma, and that all of the costs were proved with a reasonable degree of certainty. In particular, the government strenuously argues that the award of costs for occupational and vocational therapy was necessary because many of the victims had dropped out of school and this "alternative education" was necessary to make them whole.

[4] Although this presents the first case of which we are aware where there has been a restitution award based upon sexually exploitative conduct performed outside the United States, Doe does not dispute that his extraterritorial conduct subjects him to two mandatory restitution statutes: the Mandatory Victims Restitution Act, 18 U.S.C. § 3663, and, more particularly, the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259 ("Section 2259"). Indeed, as part of his plea agreement, Doe agreed to make full restitution to the victims of his crimes.

1

[5] Section 2259 directs that an "order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court." The full amount of losses includes, "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate

result of the offense." 18 U.S.C. § 2259(b)(3)(A)-(F). We have previously recognized that this section is "phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999).

And although the breadth of the statutory language is circumscribed by the requirement of "a causal connection between the offense of conviction and the victim's harm," *id.* at 965, we and the other circuits addressing restitution orders under Section 2259 have not imposed a requirement of causation approaching mathematical precision. In *Laney*, our court's first foray into Section 2259 jurisprudence, we rejected the defendant's narrow reading of the statute and held that future counseling expenses were included within the scope of the statute. *Id.* We recognized that there might be cases where the amount of future counseling expenses would be too difficult to ascertain to justify an award, but we found the district court's "estimate" of the amount the victim was likely to spend to be justified. *Id.* at 967 n.14.

Other circuits have adopted approaches similar to *Laney*'s. In *United States v. Danser*, 270 F.3d 451 (7th Cir. 2001), the Seventh Circuit agreed that mathematical precision is not required in the causal analysis upholding a restitution award of $304,200. *Id.* at 455. The *Danser* court noted that it was "mindful of the inherent uncertainties attendant upon an award of prospective damages," *id.* at 455 n.5, but reasoned:

> In the present case, the loss sustained by Karen (namely, her mental trauma) has been incurred and will continue to manifest itself for years. This difference regarding the speculative nature of the respective awards and the strong Congressional intent behind section 2259, provide the crucial distinction between the instant case and [*United States v. Fountain*, 768 F.2d 790, 801-02 (7th Cir. 1985) (express-

ing disapproval of an award of future earnings as a part of a criminal sentence)].

*Id.* Thus, although the Seventh Circuit generally disallows future losses in most restitution awards, in contexts involving awards to child victims of sexual exploitation, it allows a district court significant discretion to make a reasonable estimate of an amount that reflects the full loss to the victim. *See also United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001) (following *Laney* and allowing a victim to be compensated for future counseling expenses).

Finally, in *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999), the Third Circuit upheld a restitution award of $57,050.96. In that case, the court agreed with the district court that proximate causation had been established based upon consideration of a treating psychiatrist's report and a licensed social worker's report on the degree of impact on the victim. *Id.* The Third Circuit also considered the defendant's "conten[tion] that his actions cannot be considered the proximate cause of the girl's losses because the government's mental health experts conceded that she may have suffered from pre-existing, untreated psychological problems prior to their relationship." *Id.* It emphatically rejected the argument that it must be shown that a defendant's conduct was the sole and total cause of a victim's loss, holding that "it was entirely reasonable for the District Court to conclude that the additional strain or trauma stemming from Crandon's actions was a substantial factor in causing the ultimate loss." *Id.* at 126.

**[6]** Thus, in every circuit to consider the causation requirement of Section 2259, a rule of reasonableness is applied. We will uphold an award of restitution under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of defendant's loss with some reasonable certainty.

2

**[7]** Applying this standard to the restitution order here, the district court did not abuse its discretion in crafting its $16,475 restitution award. First, the court ordered restitution for psychological counseling for each child in the amount of $1,426. This figure provides for 24 sessions of trauma counseling and care (once a month for two years). Such future counseling costs are compensable under *Laney* and are supported by the record as reasonable estimates of the loss to the child victims.

All eight victims who could be located were interviewed on a number of occasions by government workers or by social services agencies. First, in January and February of 2005, the children were interviewed by the Department of Child Services in Doe's home country. These interviews were video-taped and summarized by the government in the PSR. Additional interviews were performed by local authorities and United States Customs Agents in April 2005. The interviews focused on the impact that defendant's criminal actions had on the victims and were also included in the PSR as victim impact statements, which the district court found credible. Finally, the government also contracted with the World Vision Foundation to conduct interviews with all eight victims that could be located. After meeting with the children on an individual basis, the Foundation assessed the children's needs and determined that two years of psychological treatment would be needed. The district court was within its discretion in relying upon such estimates from mental health professionals. *Crandon*, 173 F.3d at 126.

Further, we note that both the length of time and amount of money represented by this restitution award (two years of counseling at $1,426 per child) is low in comparison to those that have been upheld in the past. In *Laney*, we upheld an award that included six years of counseling. 189 F.3d at 966-67. In *Danser*, the Seventh Circuit upheld an award of

$304,200 for lifetime counseling sessions. *Danser*, 270 F.3d at 455-56. It does not escape our attention that Doe has reaped a benefit by choosing to molest and to exploit children in a foreign country; now convicted, he must only reimburse the children at developing-world rates for professional services.[3]

[8] The medical expenses are also reasonably related to the defendant's criminal conduct, as the district court impliedly found. After initially being concerned that the money for medical expenses could be used to treat ear infections (*i.e.*, injuries not related to defendant's conduct), the district court was assured that the money for medical expenses would go only to testing the children for sexually transmitted diseases. Testing the children for possible sexually transmitted diseases is undoubtedly causally related to Doe's conduct.

[9] We likewise do not think it was an abuse of discretion to award costs for alternative education programs and vocational training in phone repair based upon this record. The district court had before it a PSR which documented in detail the ongoing lives and struggles of eight of Doe's victims. The interviews performed with these children, as translated in the PSR, established that many of Doe's victims stopped attending school altogether after their ordeal and that other victims began cutting classes in significant numbers. Although other reasons may factor into the overall calculus as to why the boys dropped out of school, as was true in *Crandon*, it was "perfectly reasonable for the District Court to conclude that the additional strain or trauma stemming from [Doe's] actions was a substantial factor in causing the ultimate loss." 173 F.3d at 126. Further, because they all had previous relationships with each other, and because the area in which they lived was small, many of the victims reported feeling uncomfortable around past friends. The appointee for the children, the World

---

[3]Our resolution of this issue does not foreclose the payment of higher market rates to professionals from developed countries who perform counseling services to overseas victims.

Vision Foundation, recommended and developed a program for alternative learning that would allow the child victims to receive some type of education. The district court did not abuse its discretion in determining that such training was "also appropriate to make these victims whole again."

[10] Finally, in the context of this case, it was not an abuse of discretion to award a management fee to the World Vision Foundation.[4] This modest sum allows for a traditional counseling component between the victim and social worker, as well as meetings with the families of the victims. The case worker funded in part by this management fee will help rehabilitate the victims in accordance with the restitution plan. Without that assistance, it is reasonable to assume that the victims would incur additional transportation, communication, and related administrative costs associated with executing that plan. In light of the "broad discretion" granted district courts when ordering restitution, *Laney*, 189 F.3d at 966, we find this fee is appropriately included as part of the "full amount" required to compensate the "losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3)(F).

[11] We emphasize that this is a unique case. Doe traveled outside the United States to molest children in his native country. As such, he not only gets the windfall of paying only reduced developing-world rates, but the government is also hindered in its ability to investigate his remote activity, to locate all of the victims of his criminal conduct, and to provide supervision of the children's recovery. In a situation such as this, where all the child victims are minors in a foreign country, the government necessarily must contract with reputable outside organizations to perform services that might be

---

[4]Although Doe argues that nearly $7,000 of the total restitution was to cover the cost of a case worker, that assertion does not find support in the record. At the restitution hearing, the government requested only $2,383 total for the management of all eight child victim cases.

readily available by more familiar institutions in the United States.

For the foregoing reasons, we believe that the district court did not abuse its broad discretion in crafting its $16,475 restitution award.

## III

### A

Doe also contends that the failure of the district court to provide advance notice of certain special supervised conditions violated his due process rights and the rights afforded by Rule 32. The government concedes that the district court did not provide adequate notice of the special conditions of supervised release under this court's decision in *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004). The government therefore agrees that a limited remand should be ordered to allow Doe the opportunity to object to the extra conditions of supervised release.

### B

Although we need not accept the government's concession on a matter of law, *see United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987), we conclude that the district court did not provide adequate notice to Doe of certain additional supervised release conditions that were imposed.

**[12]** In *Wise*, we stated that "[w]here a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required *before* it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness." *Wise*, 391 F.3d at 1033 (emphasis added).

At Doe's first sentencing hearing, his counsel requested the opportunity to review the conditions which the court was con-

sidering imposing. The district court denied that request and instructed Doe that he would be allowed to object to the conditions "post-sentence." In *Wise*, however, we expressly rejected such a method of notice. We stated:

> It is not enough notice, however, first to impose the sentence, and then to invite counsel to comment, at least where counsel objects as occurred here. That is no notice at all. Talking a judge out of a decision he has already made is a different and harder task than persuading him not to make it. Also, such an approach prevents negotiation of a condition more precisely tailored to the legitimate interests of both sides.

*Id.*

[13] Thus, we vacate the conditions of supervised release and order a limited remand to the district court with instructions that the district court provide advance notice of any non-standard conditions it deems appropriate. Doe should be given a chance to challenge their applicability to his case.

IV

The order of restitution is affirmed. The conditions of supervised release are vacated and the case remanded to the district court for proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**