07-0142-cr
USA v. Pearson

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Submitted: May 20, 2009                    Decided: July 2, 2009)

Docket No. 07-0142-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

ABRAHAM PEARSON,

*Defendant-Appellant*.

_____

B e f o r e :

MINER, KATZMANN, and RAGGI, *Circuit Judges*.

_____

Appeal from a judgment entered January 12, 2007, in the United States District Court for

the Northern District of New York (McAvoy, *J.*) convicting defendant-appellant, following his

guilty plea to multiple counts of producing, transporting, receiving, and possessing child

pornography, and sentencing him to, *inter alia*, pay restitution in the amount of $974,902.  We

find that the district court has not explained adequately its calculation of the restitution amount

and therefore vacate that portion of the judgment and remand for further sentencing proceedings.

_____

Laurie S. Hershey, Manhasset, NY, *for Defendant-Appellant*.

Paul D. Silver, Assistant United States Attorney, and Steve Grocki, Trial Attorney, *for* Andrew T. Baxter, Interim United States Attorney for the Northern District of New York, Albany, NY, *for Appellee*.

_____

PER CURIAM:

Defendant-appellant Abraham Pearson appeals from a judgment entered January 12, 2007, in the United States District Court for the Northern District of New York (McAvoy, *J.*) convicting him, following a guilty plea to multiple counts of producing, transporting, receiving, and possessing child pornography, and sentencing him, *inter alia*, to serve fifteen years' imprisonment and to pay restitution to the child victims of his crime in the amount of $974,902. Because we conclude that the defendant has not waived his right to appeal the restitution amount, we are called upon to consider whether a restitution order pursuant to 18 U.S.C. § 2259 may include an amount for estimated future medical expenses, and, if so, whether the amount of restitution ordered, which included an estimate of the victims' future medical expenses, is reasonable. We hold that a restitution order pursuant to 18 U.S.C. § 2259 may provide for estimated future medical expenses, but we find that the district court has not explained adequately its calculation of the restitution amount. Therefore, we vacate that portion of the judgment and remand for further sentencing proceedings limited to that issue.

## BACKGROUND

2

In January 2006, Pearson was charged in a seventy-four count second superseding indictment with the production, transportation, possession, and receipt of child pornography, and with failing to keep records pertaining to individuals portrayed in sexually explicit conduct. The indictment alleged that he had, *inter alia,* videotaped and photographed two minor females ("Jane Doe #1" and "Jane Doe #2") in sexually explicit positions, and enticed them to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct.

## A. The Plea Agreement

On June 6, 2006, Pearson entered into a plea agreement in which he agreed to plead guilty to twenty-one counts of the second superseding indictment.

In the first paragraph of the agreement, the parties stipulated that "the particular sentence specified below is the appropriate disposition of this case." Plea Agreement ¶ 1(b). That paragraph also stated that "[Pearson] consents to the entry of an order directing him to pay restitution in full to any person who would qualify as a victim, under 18 U.S.C. § 3663 or § 3663A, of the above mentioned offense(s)." *Id.* ¶ 1(c). "In furtherance of his restitution obligations," Pearson agreed to provide $100,000 to the government, prior to sentencing, to be divided equally between Jane Doe #1 and Jane Doe #2. *Id.*

The next paragraph, entitled "Potential Penalties," confirmed Pearson's understanding that "[p]ursuant to the Mandatory Victim Restitution Act, the sentencing Court must order that the Defendant pay restitution to any victims of the offenses of conviction, as more fully set forth in paragraph 1." *Id.* ¶ 2(e).

In paragraph 3, entitled "Agreed-Upon Sentence," the government and Pearson, pursuant

3

to Federal Rule of Criminal Procedure 11(c)(1)(C), agreed that

> a sentence of 15 years imprisonment, a term of supervised release of up to life, an order of restitution *as specified above*, a special assessment of $2,100, an order of forfeiture as set forth below, and the other conditions set forth in paragraph 1 above is the appropriate disposition of this case (hereinafter referred to as "the agreed disposition").

*Id.* ¶ 3 (emphasis added).  The agreement specified that the term of supervised release was not part of the Rule 11(c)(1)(C) agreement and would be determined by the court.

Finally, in paragraph 11, the agreement provided:

> [Pearson] acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case, including by a challenge based on *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. [Pearson] waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence incorporating the agreed disposition specified herein, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed.

*Id.* ¶ 11.

B.  The Plea Proceedings

In June 2006, Pearson appeared before the district court to plead guilty pursuant to the plea agreement.  During those proceedings, the district court confirmed that Pearson understood the rights that he was waiving by pleading guilty.  On inquiry from the court, Pearson said that he had talked to his attorney about pleading guilty to the relevant counts and that his attorney had told him "the consequences of pleading guilty and the deal."  Plea Tr. 6:17-18.  Pearson then pled guilty to twenty-one counts of the second superseding indictment.

Thereafter, the government identified the maximum and minimum penalties for the counts involved, including the maximum and mandatory minimum terms of imprisonment and supervised release, and the amount of the special assessment. The government did not, however, describe Pearson's potential restitution obligations.

The district court then confirmed that Pearson had signed the plea agreement voluntarily, read it before he signed it, discussed it with his attorney, and understood it. Directing Pearson's attention to the appeal waiver provision of the agreement, the court asked if Pearson understood that he was waiving "the right to appeal or collaterally attack your conviction arising out of your plea of guilty here today and any sentence the Court might impose on you." Plea Tr. 28:17-20. Pearson stated that he understood.

The court accepted Pearson's guilty plea.

C. The Sentencing Proceeding

Prior to sentencing, the government submitted in support of its request for restitution to Pearson's victims reports prepared by Dr. Kenneth Reagles, the owner of K.W. Reagles & Associates, L.L.C., a company that provides "[f]orensic vocational, rehabilitation, and economic consultation services, as well as employee assistance, case management, and psychological counseling services." Gov't App. at 65, 132. Reagles concluded that each victim "has a number of mental health issues that will require treatment and services presently and into the future, some for the rest of her life" as a result of her sexual assault by Pearson. *Id.* at 12-14, 109-10. He estimated the future cost to Pearson's victims of obtaining medical care to be $2,002,732 and

5

$921,976 for Jane Doe #1 and Jane Doe #2, respectively. Gov't App. at 18, 114.[1]

In January 2007, Pearson appeared before the district court for sentencing. At the hearing, the district court stated that it had reviewed the "plethora of information" and sentencing memoranda submitted by the parties, as well as "the materials submitted on behalf of the victims with the restitution issue" by Reagles. Sent'g Hr'g. Tr. 3:17-25.

Discussing Reagles's reports, the court noted that it "d[id]n't believe" that Dr. Reagles, "who is a very good economist, [is] qualified to make diagnoses in the case of severe psychological impediments caused allegedly by the defendant." *Id.* at 10:10-15. The court found that the victims' "psychological impediments" were "caused, at least in part, by the defendant," but the court observed that the victims "had some problems before" and that it was difficult "to quantify" or "pinpoint the etiology" of the victims' mental health issues that required ongoing treatment. *Id.* at 10:13-11:8. Although Reagles's reports included "a very detailed analysis of what the [victims'] problems were before they encountered Mr. Pearson and what the . . . exacerbation turned out to be after their experiences with Mr. Pearson," *id.* at 11:17-20, the court "discount[ed] substantially what Dr. [Reagles] has put before us because he's not competent to

---

[1] Reagles estimated that Jane Doe #1 would need periodic psychiatric evaluations (four times a year) and a regimen of medications for the rest of her life, estimated to be a period of 39 years, Gov't App. at 15-17; personal counseling once a week for the next seven years and twelve to sixteen times a year for the twenty-seven years after that, *id.* at 17; and group counseling twice a month for five years, *id.* at 18. Reagles estimated that Jane Doe #2 would need periodic psychiatric evaluations (four times a year) and a regimen of medications for the rest of her life, estimated to be a period of 42.2 years, *id.* at 112-13; personal counseling once a week for the next three years and eight to ten times a year for rest of her life after that, *id.* at 114; and group counseling twice a month for four years, *id.* For each treatment, Reagles provided the present annual cost, which, in the case of future treatments, he appreciated "by a percentage factor equivalent to the annual change in appropriate elements of the Medical Price Index for the past 10 years, viz. 4.6% per year." *Id.* at 16, 112. His total estimates were based on the estimated treatment requirements and the estimated cost for each treatment.

make all these judgments," *id.* at 13:5-6. The court concluded also that the victims' future medical expenses should not be discounted to a present value because the restitution could not be paid presently.

The court relied on Reagles's proposed restitution amounts as starting points, but it did not adopt those amounts. With respect to Jane Doe #1, the court ordered that Pearson pay restitution of $667,577, an amount equal to one-third of the amount proposed by Reagles. The court ordered that Pearson pay Jane Doe #2 restitution of $307,325, explaining that it had applied the "same mathematical formula" as it had employed for the first victim. *Id.* at 14:12. The district court indicated that there were "a lot of other things" that it had put into the calculations, including what the two victims had "done subsequent to the time they were involved with [Pearson]." *Id.* at 14:15-19. In addition, the court sentenced Pearson to 180-months' imprisonment and a lifetime term of supervised release.

## DISCUSSION

A. Appellate Waiver

A threshold question is whether Pearson waived his right to appeal the restitution order. A defendant's knowing and voluntary waiver of his right to appeal a conviction and sentence within an agreed upon guideline range is enforceable. *See United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per curiam). "Waivers of appellate rights . . . are to be applied narrowly and construed strictly against the Government." *Id.* (internal quotation marks omitted). However, "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then

7

appeal the merits of a sentence conforming to the agreement." *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam).

In this case, Pearson waived his right to appeal "his conviction and any sentence incorporating the agreed disposition specified herein." Plea Agreement ¶ 11. According to the parties' stipulation, the "agreed disposition" included, *inter alia*, an order of restitution "as specified above," *id.* ¶ 3, to wit, an order to pay restitution "in full,"[2] *id.* ¶ 1(c). Such an agreement plainly contemplates a future determination of the amount necessary to provide "full" restitution to defendant's victims. In these circumstances, we conclude that Pearson has unambiguously waived his right to appeal a district court's award of full restitution, but he has not unambiguously waived appeal of possible errors in the determination of what amount constitutes full restitution.

In *United States v. Ready*, we considered the following waiver language:

> "[The defendant] and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. Section 3742 to appeal *whatever sentence is imposed*, including any issues that relate to the establishment of the guideline range, reserving only the right to appeal from *a sentence resulting from* an adjusted base offense level of greater than twenty-three."

82 F.3d 551, 560 (2d Cir. 1996) (alteration in original). Elsewhere the agreement provided: "Th[e] Court may also order your client to make restitution *pursuant to 18 U.S.C. Sections 3663 and 3664*." *Id.* at 559 (alteration in original). Noting this latter provision of the agreement, we concluded that

> [t]hough Ready's waiver of his appellate rights . . . is admittedly

---

[2] Although we acknowledge that the defendant consented to the entry of an order directing him to pay restitution "in full," we do not endorse the use of such vague language to purportedly specify the agreed upon disposition of a restitution order in a criminal case.

> broad . . . , it does not distinctly negate [the] statement that restitution will be imposed *in accordance with the restitution statute*. There is thus an ambiguity (at the least) as to the parties' intent with regard to restitution penalties imposed illegally. Construing this ambiguity strictly against the Government, we must presume that on the issue of restitution, the parties intended the phrase, '"whatever sentence is imposed," to mean "whatever sentence is imposed by law."

*Id.* (emphasis added).

Here, as in *Ready*, "the agreement explicitly applie[d] the background presumption of legality," *id.*, to the court's restitution order when it provided that "[Pearson] consents to the entry of an order directing him to pay restitution *in full*." Plea Agreement ¶ 1(c) (emphasis added). We conclude, therefore, that Pearson has not unambiguously waived his right to appeal whether the amount of restitution ordered compensates the victims "in full."

## B. Restitution Amount

We review an order of restitution "deferentially, and we will reverse only for abuse of discretion. To identify such abuse, we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks and citations omitted).

Pearson argues that the restitution order in this case is erroneous because the district court did not have a sound basis for determining what the projected costs of therapy were for the two victims.

Our Circuit has not addressed whether restitution ordered pursuant to 18 U.S.C. § 2259

may include restitution for estimated future medical expenses.[3]  Section 2259(b) provides for

mandatory restitution of "the full amount of the victim's losses," which includes "any costs

incurred by the victim" for "medical services relating to physical, psychiatric, or psychological

care."  Three of our sister circuits have considered this language and concluded that § 2259

authorizes compensation for future counseling expenses.  *See United States v. Doe*, 488 F.3d

1154, 1159-60 (9th Cir. 2007); *United States v. Danser*, 270 F.3d 451, 455 (7th Cir. 2001);

*Julian*, 242 F.3d at 1246-48; *United States v. Laney*, 189 F.3d 954, 966-67 (9th Cir. 1999).  We

are not aware of any of our sister circuits that have reached a contrary conclusion.  We are

persuaded by the analysis of our sister circuits and conclude that a restitution order pursuant to 18

U.S.C. § 2259 may include restitution for estimated future medical expenses.

   While a restitution order pursuant to 18 U.S.C. § 2259 may include an amount for future

medical expenses, "an order of restitution for future losses may be inappropriate [where] the

amount of loss is too difficult to confirm or calculate."  *Laney*, 189 F.3d at 967 n.14; *see Doe*,

488 F.3d at 1160 ("We will uphold an award of restitution under Section 2259 if the district court

is able to estimate, based upon facts in the record, the amount of victim's loss with some

reasonable certainty."); *Danser*, 270 F.3d at 455-56 (concluding that the restitution figure was

not plainly erroneous based on the uncertainty of the projected costs where the court held a

hearing concerning the victim's need for long term counseling and had evidence of the costs of

---

[3] Section 2259 of Title 18 of the United States Code provides the applicable framework
for the calculation of restitution in this case.  *See United States v. Julian*, 242 F.3d 1245, 1246
(10th Cir. 2001) ("[E]ven if the district court erroneously used the general rather than the specific
restitution statute as a basis for its judgment, it is the language of § 2259 with which we are
concerned in determining whether the court had statutory authority and discretion to award future
costs for counseling." (citation omitted)).

future counseling); *Julian*, 242 F.3d at 1248 (vacating and remanding for a hearing on the victim's need for future counseling and the estimated cost of that counseling). Where further losses are likely but the amount cannot be calculated with reasonable certainty at the time of the initial sentence, a victim may nevertheless be able to secure compensation for the further losses pursuant to 18 U.S.C. § 3664(d)(5).

In this case, although the record contains evidence of the victims' need for long term counseling and of the cost of that counseling, the district court did not explain how it estimated the victims' future expenses. Plainly, it was not persuaded that Dr. Reagles's calculations reliably predicted future loss, and it ordered restitution in a substantially lower amount. Still, without more information as to how the district court reached the lower figure, we are unable to conduct even deferential review of whether the final restitution order reflects a reasonable estimate of the cost of future counseling. We express no view on this point. At this point, we remand the case simply to secure a more thorough explanation from the district court as to the basis for its restitution determination. In doing so, we vacate that part of the judgment ordering $974,902 to afford the district court flexibility to adjust the award if, in providing its explanation, it determines that the original order does not accurately reflect "full" restitution, as agreed to by the defendant.

## CONCLUSION

Accordingly, we VACATE that part of the judgment ordering $974,902 restitution and REMAND the case for the limited purpose of ordering restitution consistent with this opinion. In all other respects, the district court's judgment of conviction is AFFIRMED.

11