NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————————

No. 12-1193
——————————

UNITED STATES OF AMERICA

v.

IDALIS LOPEZ,

Appellant

——————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 1-11-cr-00412-001)
District Judge: Honorable Joseph H. Rodriguez

——————————

Submitted Under Third Circuit LAR 34.1(a)
November 1, 2012

Before: SLOVITER, AMBRO, and BARRY, Circuit Judges

(Opinion filed: November 8, 2012)

——————————

OPINION
——————————

AMBRO, Circuit Judge

Idalis Lopez pled guilty to bank fraud in violation of 18 U.S.C. § 1344. Pursuant

to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, she was

ordered to pay $43,000 in restitution. Lopez now appeals this amount. We affirm.

Lopez was employed by Bank of America as a bank teller in Atlantic City, New Jersey. Through this position, she befriended bank customer J.R., a retired bachelor suffering from poor health. The two grew close as Lopez assisted J.R. in getting around and paying his bills, and they developed something akin to a father-daughter relationship. Lopez ultimately betrayed J.R. when she misappropriated thousands of dollars from his Bank of America account between July 2008 and May 2009. Lopez maintains that she used this money to pay expenses and that she always intended to pay it back.

Once J.R. became suspicious that Lopez was stealing from him, he made an inquiry with his bank. Lopez was subsequently interviewed on at least two separate occasions by agents from the Federal Bureau of Investigation ("F.B.I."). At first, she denied any wrongdoing. However, at the second interview she admitted to transferring money fraudulently from J.R.'s Bank of America account into her own. The Government has presented evidence that J.R.'s account was reduced by $45,502.07 during the relevant period.[1] These reductions included $8,855.07 in automatic teller machine ("ATM") withdrawals, $15,300.00 in teller withdrawals, and $21,347.00 in electronic transfers. While Lopez admits full responsibility for the electronic transfers, she denies liability for the ATM and teller withdrawals. In a letter to the United States Probation Office, J.R. confirmed that Lopez had withdrawn "approximately $43,000" from his Bank of America accounts.

---

[1] We note that the amounts reflected in the Presentence Report ("PSR") total $325 more than those contained in the record. PSR at ¶ 24. We assume that this was an unintentional mistake, and in any event it is ultimately irrelevant for the purposes of this appeal.

Following a January 11, 2012 sentencing hearing, the District Court sentenced Lopez to one day's imprisonment and three years' supervised release. She was also ordered to pay restitution in the amount of $43,000 under the MVRA. The Court issued a subsequent Order directing that the restitution funds be disbursed to J.R. Lopez appeals, and argues that the District Court lacked sufficient evidence to conclude that she owed restitution with respect to the ATM and teller withdrawals.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review the amount of a particular restitution award under the MVRA for abuse of discretion. *United States v. Bryant*, 655 F.3d 232, 253 (3d Cir. 2011) (citing *United States v. Quillen*, 335 F.3d 219, 221–22 (3d Cir. 2003)). "'To identify such abuse, we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions.'" *United States v. Aumais*, 656 F.3d 147, 151 (2d Cir. 2011) (quoting *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009)).

To repeat, Lopez admits responsibility for the $21,347 of fraudulent electronic transfers, but disclaims liability for the balance of the $43,000 withdrawn through ATM and teller transactions.[2] In particular, she asserts that some additional evidence was

---

[2] Lopez represents that she has been steadfast in this position, yet we note that the PSR calls this assertion into question. It states that Lopez "denied that she used the ATM money for herself and said that the counter withdraws [sic] conducted at the bank were for J.R.'s benefit and used to pay his monthly bills." PSR at ¶ 22. Further, Lopez apparently admitted to "taking a few hundred dollars from these type of transactions for herself." *Id.*

necessary—such as withdrawal slips, witness testimony or surveillance videos—to implicate her for the additional funds.

The MVRA directs that defendants convicted of certain offenses "make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1). The Act applies to offenses against property, *id.* at § 3663A(c)(1)(A)(ii), which includes Lopez's conviction for bank fraud. "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* at § 3664(f)(1)(A). The MVRA places the burden on the Government to demonstrate the amount of a loss and directs that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* at § 3664(e).

To meet this burden, the Government presented a spreadsheet totaling the disbursements from J.R.'s account at $45,502.07 and the unsworn letter by J.R. stating that his losses were "approximately $43,000." We hold that it was not clearly erroneous for the District Court to determine that this production was adequate in this case.

The Court's determination survives scrutiny for clear error primarily because it was not "completely devoid of a credible evidentiary basis" and bore a "rational relationship to the supporting data." *United States v. Vitillo*, 490 F.3d 314, 330 (3d Cir. 2007) (quoting *United States v. Haut*, 107 F.3d 213, 218 (3d Cir. 1997)). All that is required in the restitution context is a "modicum of reliable evidence." *United States v. Salas-Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010) (quoting *United States v. Vaknin*, 112

4

F.3d 579, 587 (1st Cir. 1997)).  Here, the victim's letter was largely corroborated by the account activity, and it was not irrational for the District Court to afford it substantial weight in the absence of credible countervailing evidence.  *See United States v. Smith*, 528 F.3d 423, 425 (5th Cir. 2008) (holding employee's interview statement of loss was sufficient where the defendant "did not introduce any rebuttal evidence or elicit any live testimony at the sentencing hearing suggesting that the victim's calculation of the total loss was incorrect"); *United States v. Prochner*, 417 F.3d 54, 66 (1st Cir. 2005) ("In the absence of rebuttal evidence beyond defendant's self-serving words, we cannot say the court clearly erred in accepting the PSR's calculation of the restitution amount.").

Furthermore, a victim impact statement can be sufficient to establish the amount of a loss.  *See, e.g.*, *United States v. Rochester*, 898 F.2d 971, 982 (5th Cir. 1990) (holding an affidavit was a sufficient factual basis for an order of restitution); *United States v. Bales*, 813 F.2d 1289, 1298 (4th Cir. 1987) (determining that a victim impact statement made by a bank security officer provided "adequate proof of the loss").  The U.S. Sentencing Guidelines endorse this approach, commenting that "affidavits of witnesses may be adequate under many circumstances" in order to resolve sentencing disputes.  U.S.S.G. § 6A1.3 cmt.  Moreover, the procedure in the MVRA requires a district court to "order the probation officer to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order."  18 U.S.C. § 3664(a).  Insofar as this report shall include "a complete accounting of the losses to each victim," *id.*, the probation officer is required—where practicable—to notice the identified victims and provide each with an affidavit form as to

5

their specific losses subject to restitution, *id.* at § 3664(d)(2)(B), (A)(vi). We see no reason that J.R.'s letter should be disallowed as the equivalent of a victim impact statement, especially since the author was subject to criminal liability for "any materially false, fictitious, or fraudulent statement or representation" contained within it. 18 U.S.C. § 1001(a).[3] As such, it was an adequate basis for the District Court's decision, and we affirm its restitution order.

---

[3] Section 1001(a) provides that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years . . . or both." 18 U.S.C. § 1001(a)(2).